Good morning. May it please the Court, my name is Daryl Parker. I'm the attorney for Appellant and Plaintiff alone, Fireman's Fund Insurance Company and Fireman's Fund McGee Marine Underwriters. I would like to reserve a few minutes at the end of my session. You try to keep track of your time and we'll try to help you. You've only got ten minutes and it's counting downward. That's how it works. I understand, Your Honor. Appellant submits that the issue in this appeal is very narrow. The question is whether or not the complaint alleges facts which show relationships between the parties and circumstances of a loss, which entitle Fireman's Fund to be subrogated to the rights of its insured against the defendant's sonitrol. Just to review briefly those facts, the Appellant and Fireman's Fund insured equipment belonging to some school districts in San Diego, computer equipment, at a facility which they maintained there. The appellee, Sonitrol, entered into a contract with the school districts by which it agreed that it would warn them if there were any temperature anomalies at the facility and that Sonitrol would monitor the temperatures so that if there were a problem, it could tell the school districts. In August 2002, over the Labor Day weekend when nobody was at the school facility, there was apparently some kind of a breakdown in electrical or air-conditioned equipment. Temperatures started rising. Sonitrol either didn't detect it or else they didn't warn the school districts that there was a problem. Temperatures continued to rise and eventually they caused damage to the computer equipment to an extent of about $3 million. So the insurance company paid for the loss? I'm sorry? The insurance company paid for the loss, correct? Yes, that's correct, Your Honor. Okay, so why should you give – why are you entitled to equitable indemnity from Sonitrol? Equitable subrogation, I'm sorry. Equitable subrogation is a recognized – I understand. I read your briefs, read the cases. In terms of policy, Sonitrol was the party who was in a position to do something about this loss. It agreed that it would warn the – Why don't you back up a little bit? So this case got knocked down on 12-B-6, correct? That's correct, Your Honor. All right. The district court judge said you can't prove any set of facts that show you're entitled to equitable subrogation, right? That's how we understand the ruling. And you applied California law? That's correct. Okay, so what is it about California law, unequitable subrogation, measured against your facts that you allege that we must take as true, which shows that you've alleged sufficient facts, demonstrate that you're entitled, you might be entitled, you know, you could possibly show that under California law you've got a good claim for equitable subrogation? Your Honor, we submit that the tests are laid out in Farmers Fund v. Wilshire Film Ventures, and it's a five-part test, but there's really two parts that are an issue here, the only ones that are subject to dispute. The first one is whether or not the insured suffered a loss for which the defendant was liable, either because the defendant was the wrongdoer or, and this is the important point, because the defendant would have been legally liable to the insured if the insured had had no insurance. The other primary issue is whether or not, as between the insurance company and the party against whom the subrogation is sought, the insurance company and the insurer are in a superior position. If you look at, I know there's some dispute about whether or not, what exactly was the contract. There was some dispute about that before the district court. The district court, there was no oral argument, by the way. Well, in the paperwork there must have been some dispute, because the district court said, I'm just going to look at what was alleged in the complaint. That's correct, Your Honor. Essentially, there was a lot of time spent during the motion by both sides on what was the contract, what was in it, what was agreed to. But the district court didn't address any of that. The district court said. Now, there's nothing in that, in the complaint that alleges that, if I'm not mistaken, maybe I'm wrong, but you don't allege any clause in the contract that would require Sonitrol to pay as in to absorb the loss. Your Honor, there's no clause in the contract by which Sonitrol agrees to absorb the loss. Right. There was provisions in the contract by which Sonitrol agrees to do certain things, and they didn't do the things that they agreed to do, and as a result. So you allege that's the cause. I'll just read you your complaint. I'm on page 7 of your complaint. As a direct and proximate result of such breaches of contract by the monitoring company, that is the Sonitrol, the insureds were unable to take steps to prevent damage to their computer equipment. I gather you're alleging breach of contract and consequential damages. Yes, Dan. The characterization of consequential may or may not apply, but they were a direct foreseeable result of the fact that Sonitrol did not do what it was supposed to have  Well, and you're alleging, as I read this, you're alleging recoverable damages on a lawsuit that the insured might have brought but did not. The reason they didn't bring it, of course, is you paid them. That's correct, Your Honor. And under the usual rules of subrogation, we get the insurance company. So the real issue for me in subrogation is what's the contract provide, and I don't have the contract. But I have here a statement that the contract has been breached, and as a result of the breach, damages have been suffered. That's correct. That's what's in the complaint. Yes. So until I read the contract, I don't know anything more. It seems to me that you've alleged a breach of contract and damages result therefrom. I agree, Your Honor. I mean, that was our position below, and it's our position now. There are lots of other issues, like, that could be gone into a trial. But right now the point is there was a contract. Sonitrol breached it. Our insurer was damaged. We paid the insured. Sonitrol was the one in a position. You now allege that you should be in the shoes of the insured. That's correct. And if the insured has a cause of action of good, if not, you lose. That's correct. That's how simple it is. All right. And Zurich Insurance Company, which we cite, says that an alarm company can be liable to an insured if it doesn't give the warning it agreed to give, and as a result, to the extent that loss is sustained because it didn't come through in a proper amount of time for the, whoever was going to take care of the problem to do it, then the damages can be awarded. Why don't we hear from the other side? That will allow you to save about two and a half minutes. Very good, Your Honor. Good morning. May it please the Court. Could you identify yourself for the record, please? Yes, Your Honor. Robert LeMay. I represent Sonitrol Corporation. Thank you. There are three reasons why the district court should be affirmed. The first is that the doctrine of superior equities is the state of the law in California on equitable subordination. The second is that the proper application of the doctrine of superior equities is established in this case by the case of Fireman's Fund v. Moore Signals, which counsel did not mention, which actually is directly on point and really carries the day. The third reason is that there really are no cases, although argument is made by counsel in his brief, that somehow Fireman's Fund v. Moore Signals is not the state of the law on... Let me ask you this, if I could. If, and this is an if, I don't ask you to concede it as an actual proposition. If the insured is entitled under his contract with your client to recover for the damages caused by the rise in the heat, is there in that situation subrogation of the insurance company? I would agree, Your Honor, if the contract was in the nature of an indemnity. Don't talk about indemnity. I want to say it's a very simple question that doesn't need very many fancy words. Assume that the contract you had with the insured was breached by your client... Yes. ...and that the insured has a good cause of action against you for damages caused by that breach of contract. Yes. Assume that. You don't have to... That's not a concession for all time. If that's so, is the insurance company subrogated to that cause of action that the insured had against your client? No, Your Honor. Why? And that's what they alleged. Okay, my question is why. The reason why is the doctrine of superior equities, which is the state of the law in California. And what's the doctrine of superior equities say here? It doesn't sound to me as though it's equitable that your client should be able to escape a breach of contract just because the insurance company paid off. The doctrine, Your Honor, is stated in the Meyer v. Bank of America case, California Supreme Court. It's an old case. It's been interpreted legions of times. What is it? The case, Your Honor, involves a surety, a bonding company with respect to an employer who employed a forger who forged a check. The check was paid by the Bank of America. The insurer, the surety, paid the employer for the loss and then sued Bank of America as a subrogating insurer. What the court held was that there was no right to subrogate, and the reason why was that there was no superior equity that was in favor of the insurer. Finding superior equity generally is a question of facts. Your Honor, in the Morse Signals case, which I believe is directly on point, it was a demurrer case for failure to state facts that are almost identical. That's a little bit different. A little bit different. That's true. The difference is, is that in the Morse Signal case, there were burglars, burglary and fire systems that, like this case, they failed to work, and they failed to detect that which they were supposed to warn of, which is exactly what Fireman's Fund is alleging here. However, in this situation, the circumstance was a temperature alarm. The concept is the same. There was an event that the party was interested in having a warning about, and they contracted the sonotel to provide for that warning. It wasn't provided. That's what's alleged. This, you know, just strikes me as just a little bit different than the burglary or fire situation. I think it's identical, because the nature of the... We're dealing with computer equipment. Correct. Very sophisticated, lots of computer equipment. And they had to keep the room at a certain temperature. That's correct. I'm just guessing. You're exactly right. As the temperature rises, they need to take steps to make sure to bring it back down to an appropriate level. If it gets over a certain level, then it could cause damage. And so this was all, as I understand it, was to alert them that the temperature was rising. That's correct. So, I mean, that seems to me... And if they got a proper warning, they could step in and take steps to correct the problem. There's nothing different between that circumstance and one involving a fire. It's the same. If a fire... Same? It's the same. If a fire occurs and it causes a smoke alarm or a, say, a sprinkler alarm attached to a sprinkler system to go off, it's what the alarm company contracts to do is to warn. If the signal goes off, they're going to provide a warning to whoever is designated to that warning to go to. There's nothing different. It's an event that causes some concern to the contracting party. In a smoke alarm situation, it seems as though if there's smoke, there may well be a fire afoot guarding that damage. Here they were trying to prevent that. It just strikes me as a little bit different. Judge, you know, the judge suggested that it's a tribal issue of fact. No. And the central issue, Your Honor, the facts that were alleged in the petition that Fireman's Fund can't get away from are that they alleged this secondary kind of liability. Let me ask you this. I'm now going to focus on the order written by the district court. Yes, Your Honor. The district court discusses Wilshire, in which there is subrogation, and the district court describes Wilshire, I think, accurately. In Wilshire, a cameler lessor's insurer was found entitled to equitable subrogation from the lessee who breached an agreement to return leased equipment or pay for it. That's on page 5. On page 6 of the order, in Wilshire, this is now the district court speaking again, in Wilshire, the contract between the parties expressly provided that the lessee was required to return the equipment or pay for it. Thus, the defendant in Wilshire was legally responsible for the loss. Then the court writes, based on a careful reading of the complaint in this case, this court finds nothing in the pleading to suggest that the defendant had agreed to be legally responsible for any losses that might be incurred by the insurers. Yes. Well, as I read the district court saying, this court says, if your client were legally liable in damages to the insured, there would be equitable subrogation. Isn't that what the district court is saying? I don't believe so, Your Honor. I believe... Then why is the district court so careful to distinguish Wilshire, where there was a legal obligation, and say, here, I find no legal obligation? Well, I think you have to look at the two cases and set them side by side. Well, I think he just did. Well, he did, and he's pointing out the distinction. I think he's absolutely right, except on the point as to whether or not there's been properly alleged in the complaint that there's a legal obligation to pay damages upon breach of contract. Well, the legal obligation that was in Wilshire was this lease contract, which primarily required the lessee to either return that equipment or pay for it. Now, the cases that Wilshire relies upon are patent, scaffolding, and the Meyer Coolidge case. But for me, this comes down to whether or not you've reached, whether your client has agreed in the contract to be liable for consequential damages in the event of breach. I have no idea, in a real sense, because I haven't read the contract. The only thing I've read is the complaint. I don't believe that it's required, and I think that the district court was correct in not looking at the contract. There was confusion or dispute about what the contract was. District court said we don't need it because what was alleged is clear. The only allegation is that the contract required a duty to warrant. It did not say that there was a duty to pay. It couldn't. It couldn't have said that. Why would you bother? Why would anyone bother to get a monitoring system and pay for it every month? I assume they pay for it every month or every day or every week, whatever it is. They would pay for it merely so that there would be a warning and no liability if they didn't warrant it? Why bother? Here's the distinction. A customer can want that service. They can pay the minimal amount that is required to get a signaling device. That's a totally different thing from buying insurance to cover the loss that might occur. Because of that, and you go back to the Morris case, because they alleged that they bought insurance and it was paid, it was clear who the primary responsibility was on. It was on the insurer. And under the doctrine of superior equities in California, the insurer in that circumstance does not have superior equities. Because the insurer has money and they paid it out. They don't have superior equities. Because the implication, Your Honor, is that they were not looking to the security company. They weren't looking to the security company to cover the loss. They were looking to the insurance company. And that's where it comes down. That's what the case is saying. What would happen if the insurance company went broke? And in these days, insurance companies apparently are going broke. Anyway, what would happen if the insurance company, would the Board of Education have a lawsuit against your client? No question. No question. Just like in that Bank of America case where the court says that the employer had a lawsuit against the bank. It doesn't make a difference. That's what the case is saying. I hear what you say, but it doesn't make any sense to me. I see my time is up. Okay. Thank you. Response? Just very shortly, Your Honor. With respect to the, I think the important thing to remember here is that the insurer was looking to Sonitrol to do certain things. And Sonitrol didn't do those things. And the reason it was looking to Sonitrol to do that is because it had sensitive equipment subject to temperature rises. And it was looking for something that would warn it if there was a problem, so they could go in and alleviate the problem before it became a source of damage. I would also point out that the contract expressly provides that Sonitrol is going to do that. This isn't, you know, and we allege this in the complaint, and the contract says it. I think the equitable superiority argument has to be put in the context that the question is whether the party seeking subrogation is equitably in a superior position to the party from whom it's seeking recovery. One thing to remember about the Meijer v. Bank of America case is that particular right there, which the court said the insurance company could not enforce, is that a depositor has an absolute right, there's absolute liability on a bank not to pay a forged instrument. And that exists regardless of negligence, and it certainly existed at the time Meijer was decided. So there could have been, there you had a bank which was strictly liable, and you had an insurance company which paid the loss. The equities are totally different in that case than were here, where you had a company that was supposed to monitor temperatures, but it didn't. As a result, Fireman's Fund had to pay the loss to its insurer. And that's all I have, Your Honor. Okay. Thank you very much. Thank both sides for your argument in this case. Fireman's Fund v. Senatorial Management is now submitted for decision. The next case on the argument calendar is McCulloch v. Cita Company. Thank you.
judges: Fletcher, Paez, Duffy